J-S30003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SIR-KHAN HEADON | |
| Appellant | No. 1570 EDA 2014 |

Appeal from the Judgment of Sentence October 11, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005889-2012

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED JULY 15, 2015**

Appellant, Sir-Khan Headon, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for possession with intent to deliver ("PWID"), simple possession, and conspiracy.[1]  We affirm the convictions but vacate and remand for resentencing.

In its opinion, the trial court fully set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.[2]

Appellant raises the following issues for our review:

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16); 18 Pa.C.S.A. § 903, respectively.

[2] Police found the marijuana in a freezer **bag**, not in a freezer.

WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE. THERE WAS NO EVIDENCE THAT APPELLANT WAS A RESIDENT OF 421 WINTON STREET, THAT HE CONSPIRED WITH [CO-DEFENDANT] TO SELL NARCOTICS, OR THAT HE HAD THE INTENT TO MANUFACTURE OR DISTRIBUTE MARIJUANA OR COCAINE.

WHETHER APPELLANT IS ENTITLED TO A NEW TRIAL BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO PROVE APPELLANT GUILTY OF EACH AND EVERY ELEMENT OF THE CRIMES OF THE CONVICTION, POSSESSION WITH INTENT TO MANUFACTURE OR DELIVER, CRIMINAL CONSPIRACY AND INTENT TO POSSESS A CONTROLLED SUBSTANCE.

WHETHER THE COMMONWEALTH FAILED TO PROVE DRUG AMOUNTS ATTRIBUTABLE TO APPELLANT AND THEREFORE THE MANDATORY SENTENCE SHOULD NOT HAVE BEEN IMPOSED.

(Appellant's Brief at 3).

A challenge to the sufficiency of the evidence implicates the following

legal principles:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact

while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Our standard of review for a challenge to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Genece E. Brinkley, we conclude Appellant's first two issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions. (**See** Trial Court Opinion, filed August 1, 2014, at 9-16) (finding:

- 3 -

**(1)** jury heard testimony from police officers who executed search warrant in Appellant's home, where police found large amount of drugs; in bedroom where they found Appellant, officers observed marijuana and large sum of cash in open night table drawer; in same bedroom, police recovered purse which contained 58.7 grams of cocaine, large amount of marijuana, pills, and cash; verdict did not shock one's sense of justice; **(2)** regarding PWID conviction, Appellant gave his home address as 421 Winton Street when arrested, which is same address where police found Appellant and large amounts of drugs and cash; drugs were divided into smaller baggies for sale to wider customer base; drugs tested positively for marijuana, cocaine, and Xanax; Commonwealth's expert opined that drugs were possessed with intent to deliver; evidence was sufficient to convict Appellant of PWID; regarding conspiracy, police found Appellant and co-defendant at residence both wearing clothing to sleep in; in bedroom, Appellant had other clothing which he changed into when he knew he was under arrest; Appellant's co-defendant told police she lived at 421 Winton Street with Appellant; Appellant and co-defendant's relationship, close proximity to drugs and cash, and overt acts were sufficient to sustain conspiracy conviction;[3] regarding

---

[3] The trial court cites **Commonwealth v. Bricker**, 882 A.2d 1008 (Pa.Super. 2005), for the proposition that relevant factors in the determination of a conspiracy include "an association between the alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and participation in the object of the conspiracy." This
*(Footnote Continued Next Page)*

simple possession conviction, jury properly found Appellant constructively possessed drugs because police found drugs in area of house where Appellant had equal access and control). Accordingly, we affirm as to Appellant's first and second issues on the basis of the trial court opinion.

In his third issue, Appellant argues he had no actual or constructive possession of the cocaine found in the bedroom. Appellant asserts the court improperly applied a mandatory minimum sentence to his PWID conviction because the Commonwealth failed to prove Appellant possessed the requisite amount of cocaine. Appellant concludes this Court should vacate his judgment of sentence and remand for a new trial or, in the alternative, resentencing. We disagree with Appellant's contentions but conclude Appellant is entitled to resentencing.

Instantly, Appellant essentially reiterates his challenge to the sufficiency of the evidence for his PWID conviction, which we have already determined is meritless. The evidence supported the jury's finding that Appellant possessed more than ten (10) grams of cocaine, which the court relied on to apply the mandatory minimum set forth in 18 Pa.C.S.A. § 7508 at sentencing. *See* 18 Pa.C.S.A. § 7508(a)(3)(ii) (mandating minimum sentence of five (5) years' incarceration where defendant is convicted of PWID involving at least ten (10) grams but less than one hundred (100)

*(Footnote Continued)* ───────────

quotation is not from *Bricker*; it is found in *Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa.Super. 2007).

- 5 -

grams of cocaine and, at time of sentencing, defendant has been convicted of another drug trafficking offense).

Nevertheless, we are mindful of the United States Supreme Court's decision in **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), in which the Court expressly held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt. Section 7508(b) states that the statutory provisions shall not be an element of the crime and applicability of the statute shall be determined at sentencing by a preponderance of the evidence. Recently, in **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014) (*en banc*), this Court addressed the constitutionality of a similar statute, 42 Pa.C.S.A. § 9712.1, in light of **Alleyne**. Relying on **Alleyne**, **Newman** held that Section 9712.1 can no longer pass constitutional muster as it "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence that the defendant was dealing drugs and possessed a firearm, or that a firearm was in close proximity to the drugs." **Newman, supra** at 98. Thus, this Court vacated Newman's PWID sentence and remanded for resentencing without imposition of the mandatory minimum under Section 9712.1. **See also Commonwealth v. Valentine**, 101 A.3d 801 (Pa.Super. 2014) (extending logic of **Alleyne** and **Newman** to Sections 9712 and 9713 and holding those sections are likewise

unconstitutional insofar as they permit automatic increase of defendant's sentence based on preponderance of evidence standard; Commonwealth and trial court's attempt to cure unconstitutional provisions of statutes by including questions on verdict sheet regarding whether defendant possessed firearm and whether robbery occurred in or near public transportation, did not remedy fundamental unconstitutionality of statutes; in presenting those questions to jury, trial court performed impermissible legislative function by creating new procedure in effort to impose mandatory minimum sentences in compliance with *Alleyne*; trial court lacked authority to allow jury to determine factual predicates of Sections 9712 and 9713, where statutes are not severable and are unconstitutional in their entireties). *Accord Commonwealth v. Hopkins*, ___ A.3d ___, 2015 WL 3949099 at **11-13** (Pa. June 15, 2015) (declaring mandatory minimum statute at 18 Pa.C.S.A. § 6317 unconstitutional in its entirety under *Alleyne*, where statute stated its provisions were not elements of crime and applicability of statute should be determined at sentencing by preponderance of evidence; Commonwealth could not cure unconstitutionality of Section 6317 with special verdict sheet that presented interrogatories to jury regarding facts required to trigger mandatory minimum).

Subsequently, this Court directly addressed the constitutionality of Section 7508 in *Commonwealth v. Vargas*, 108 A.3d 858 (Pa.Super. 2014) (*en banc*), where the trial court imposed a mandatory minimum

sentence for a PWID conviction, pursuant to Section 7508(a)(7)(iii).  On appeal, this Court emphasized that Section 7508 "is structured in the same manner as the statutes at issue in **Newman** and **Valentine**…."  **Id.** at 876-77.  This Court concluded that Section 7508 is also unconstitutional in its entirety and cannot be severed.  **Id.**

Here, the jury convicted Appellant of PWID and related offenses.  The verdict sheet specifically asked the jury to answer, *inter alia*, the following questions: "Do you find [Appellant] guilty of possession with the intent to deliver a controlled substance?"; "If yes, do you find [Appellant] guilty of possession with intent to deliver a controlled substance—cocaine in an amount greater than 10 grams?"  (Verdict Sheet, dated 8/1/13, at 1).  The jury answered both of these questions affirmatively.  At sentencing, the court imposed a five (5) year mandatory minimum sentence for Appellant's PWID conviction, pursuant to 18 Pa.C.S.A. § 7508.  When it asked the jury to find beyond a reasonable doubt the factual predicates for the mandatory minimum sentence at Section 7508, the trial court performed an impermissible legislative function, as the relevant statutes are not severable and are unconstitutional in their entireties.  **See Hopkins, supra**; **Vargas, supra**; **Valentine, supra**; **Newman, supra**.  Therefore, the court's imposition of the Section 7508 mandatory minimum sentence was unlawful.  Accordingly, we affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing without imposition of a mandatory

minimum term under 18 Pa.C.S.A. § 7508.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

_[signature]_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/15/2015

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSLYVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH          :          CP-51-CR-0005889-2012

: 

vs.          :

:

:

SIR-KHAN HEADON          :          SUPERIOR COURT

:          1570 EDA 2014

BRINKLEY, J.          AUGUST 1, 2014

## OPINION

Defendant Sir-Khan Headon appeared before this Court for a jury trial and was convicted of possession with intent to deliver a controlled substance (PWID), conspiracy and knowing and intentional possession of a controlled substance possession. (K&I). This Court sentenced Defendant to 5 to 10 years state incarceration on the PWID charge, five years reporting probation on the conspiracy charge, to run consecutively to the PWID charge and no further penalty on the K&I charge. Defendant appealed this judgment of sentence to the Superior Court and raised the following issues on appeal: (1) whether the verdict was against the weight of the evidence; (2) whether there was insufficient evidence to prove Defendant guilty of each element of every crime thus entitling him to a new trial and; (3) whether the Commonwealth failed to show drug amounts attributable to Defendant causing an improper application of the mandatory sentencing range.

CP-51-CR-0005889-2012 Comm. v. Headon, Sir-Khan
Opinion

7181028831

1

## PROCEDURAL HISTORY

On December 2, 2011, Defendant was arrested and charged with PWID, conspiracy and K&I. On August 1, 2013, a jury found Defendant guilty of PWID, conspiracy and K&I. On October 11, 2013, this Court sentenced Defendant to 5 to 10 years state incarceration on the possession with intent to deliver charge, five years reporting probation on the conspiracy charge to run consecutively to the possession with intent to deliver a controlled substance charge and no further penalty on the K&I charge. This Court ordered Defendant to undergo random urinalysis, complete job training and anger management, to seek and maintain employment, stop selling and using drugs and to pay court costs and fees.

On October 13, 2013, Defendant filed a Motion to Reconsider Sentence through counsel, which was denied by operation of law on May 1, 2014. On May 20, 2014, Defendant filed a Notice of Appeal to Superior Court. On June 9, 2014, upon receipt of the notes of testimony, this Court ordered defense counsel to file a Concise Statement of Errors Complained of on Appeal Pursuant to Pa. R.A.P. 1925(b) and defense counsel did so on June 27, 2014.

## FACTS

On July 31, 2013, the trial in this matter began with Defendant and co-Defendant Robin Pickron ("Pickron"). The Commonwealth attorney was Christina Pastrana, Esquire and defense counsel for Defendant was Raymond C. Driscoll, Esquire. The Commonwealth called its first witness, Agent Michael Gmitter ("Gmitter") to the stand to testify. Gmitter testified that he had been an agent for nine years and that he was on duty on December 2nd, 2011. He stated that his duties as an agent were to serve body warrants and on the night of December 2nd, 2011, his duties took him to 421 Winton Street. He testified that the target at that address was Defendant. He stated that it was not Defendant's last known address, but what brought them to that address was

2

that the unit received information that Defendant was staying there at that time. He testified that he had approximately 12 agents with him on that day. He testified that they arrived around 6:30 a.m. and knocked and announced their presence at the front door. They then entered the two-story row home, and he went up the steps leading to the second story rear bedroom. He testified that he was the first one to go up the steps and upon doing so, he saw Pickron exit the bedroom about 15 feet away from him. (N.T. 7/31/2013 p. 55-58).

Agent Gmitter testified that Pickron went with other officers and he went into the bedroom, where he encountered Defendant. He testified that he handcuffed Defendant and searched his person. He testified that while searching Defendant, he saw an open dresser drawer next to the bed with packets of a green leafy substance and a large sum of cash. He identified the packets in the courtroom and they were entered into evidence. Agent Gmitter testified that Defendant was wearing sleeping clothes when he first saw him, but before Defendant was taken out of the house, he was given the opportunity to get dressed. He stated that he completed a report after the arrest of Defendant and that he conferred with his supervisor at the scene regarding the items in the dresser. He testified that Philadelphia police officer Gergory Barber arrived, and Gmitter showed him the dresser drawer. At that point, Defendant was taken into custody and transported away. He stated that while at the property, he saw two or three other people and it was a mixture of adults and juveniles. Id. at 58-62.

The Commonwealth next called Officer Gregory Barber ("Barber") to the stand to testify. Barber testified that he had been a Philadelphia police officer for 18 years and in the Narcotics Field unit for 13 years. He explained that in the Narcotics Field Unit he worked in plain clothes, made undercover drug transactions, prepared search warrants and assisted those who executed search warrants. He testified that on December 2, 2011 he was called to assist an agent around

3

7:00 a.m. at 421 Winton Street. He testified that when he arrived at the location he met Agent Gmitter outside who took him inside and showed him a dresser in the second floor rear bedroom. He stated that in the drawer he saw marijuana packaging and large sums of money. He testified that the items recovered were 7 red Ziploc packets of marijuana and approximately $1300 of United States currency. He testified to the property receipt he filled out and the information it contained for it to be processed by the Philadelphia police department. He testified that the test on the packages returned a positive reaction for marijuana. Id. at 83-88.

Officer Barber testified that the property receipt that was entered into evidence as C-7, indicated $1,342 that was recovered from the dresser drawer. He stated the money was folded in a pile and in different denominations: sixty $20 bills, eight $10 bills, nine $5 bills, and one $1 bill. He testified that the packaging was not tested for fingerprints as it was not in the practice of the Narcotics Field Unit to do so, since the packets ostensibly came into contact with many different people. He stated that the house was secured and that there were three to four people present, two of whom were Defendant and Pickron. He testified that he followed the procedure he normally does after securing a location, which involved returning to headquarters and preparing a search warrant that an attorney district reviewed before sending to a judge. He testified that in this case, he returned to the property after the judge approved the warrant about three hours after the property was first secured. Id. at 88-94.

Officer Barber testified that he helped execute the search warrant at 421 Winton Street. He testified that he recovered a pocketbook from the rear bedroom that had clear sandwich bags and a larger bag of marijuana with multiple sandwich baggies of cocaine and a white pill bottle. He testified that the packets with cocaine had a total of 58.7 grams of cocaine, and they came back positive for cocaine using the NIK test. The baggies with marijuana also came back

4

positive for marijuana when he used the NIK test. He stated that the white alleged Xanax pills were stamped with 'G3721.' He testified that a digital scale that had white residue was recovered, as well as an additional $132. He stated that in the kitchen there was a large freezer Ziploc bag containing eight sandwich baggies with alleged marijuana for a total weight of 221.3 grams of marijuana. He testified there were also letters addressed to Robin Pickron at 421 Winton Street. Officer Barber identified the Ziploc bags, scale and property receipt for the $132 while on the stand and they were all entered into evidence. He stated that these items were not preserved for fingerprints and that it was not part of the normal practice to do so. Id. at 94-103.

Officer Barber testified that Pickron and Defendant were placed under arrest and Defendant was charged for his relationship to the narcotics. He testified that when he asked Defendant biographical information to fill out on a police report, Defendant told Officer Barber that his address was 421 Winton Street. He testified that Pickron also stated the same as her address and said that she resided with her boyfriend. Id. at 103-110.

Next, the Commonwealth called Police Officer Theresa Weaver ("Weaver") to the stand to testify. Officer Weaver testified that she had been a police officer for 19 years and had been part of the Narcotics Field Unit for 17 years. She testified that for 11 years she had been partners with Officer Barber and that she was involved in the investigation on December 2, 2011. She stated that she was part of the team that executed the search warrant at 421 Winton Street. She stated that her role was to assist in searching the property. She testified that she recovered a freezer bag that contained eight clear sandwich baggies from a kitchen cabinet. She stated that she also recovered two letters for Pickron addressed to 421 Winton Street. She stated that she placed Pickron under arrest and supervised her as Pickron went upstairs to get clothes to change into from the rear bedroom. Id. at 135-139.

5

The Commonwealth read a stipulation, by and between counsel, stating that if chemist Maryama Shagu of the Philadelphia Police Department chemistry lab were called to testify she would testify in accordance with the report she prepared that the seven red Ziploc bags tested positive for marijuana as did the two clear plastic bags. Further, if analyst Samuel Jose were called to testify, he would testify that he analyzed the clear Ziploc bag containing eight clear bags, each with marijuana. He would testify that each bag weighed 27.8 grams. He would testify that he also analyzed two clear Ziploc bags and found that they held marijuana and each weighed 9.28 grams. He also analyzed the clear plastic bag containing white powder, which tested positive for cocaine in the amount of 18.37 grams. He analyzed one clear Ziploc bag that contained 102 heat-sealed green packets, each containing off-white powder and they each tested positive for cocaine in the amount of .496 grams. He analyzed the white plastic bottle containing the tablets marked 'G3721,' which tested positive for alprazolam, colloquially known as Xanax. Lastly, he analyzed the white substance on the digital scale, which tested positive for marijuana and cocaine. Id. at 150-155.

Following the stipulations, the Commonwealth called police officer Kevin Keys ("Keys"). Officer Keys testified that he is part of the Narcotics Field Unit, but was not involved in this particular case. He testified that he had been a Philadelphia police officer for 25 years, was in the Narcotics Field Unit for 13 years and was a drug enforcement officer for 7 years. He explained what type of training he received as a drug enforcement officer and as a member of the Narcotics Field Unit, including training in identifying narcotics, packaging, retrieving stashes, among other areas. He stated that he had been involved in over 3,000 different narcotics-related investigations and that those investigations ranged from surveillance to executing warrants to long-term investigations of an organization. He testified that marijuana and cocaine are

6

considered narcotics. He stated that he had received ongoing training, attending courses at the DEA, Northeast Counter Drug Training, Top Gun Training and a 100 hour course through McLaughlin, among other types of training. He stated that he has testified as an expert in the area of narcotics sales and packaging over 1,500 times in the Court of Common Pleas, Juvenile Court and Federal Court. Officer Keys was offered and accepted by the Court as a narcotics expert specifically in the area of narcotic sales and packaging in the city and county of Philadelphia, to no objection. Id. at 156-162.

Officer Keys testified that he reviewed the evidence in this case. Particularly, he reviewed the amounts of marijuana, the packets, the bags and the contents therein. He testified that the pink bags with the marijuana in them would be sold as for roughly $35 as a quarter of an ounce. He testified that the bigger bag containing 8 bags had about 28 ounces of marijuana in each bag and would sell for $120 to $360 per ounce, depending on the quality of the marijuana. He stated that another bag, in which there was roughly 222 grams, would sell for $500 in bulk, but if broken down into eight bags, would be worth $920. Regarding the cocaine, he testified that the amount of cocaine in just one packet weighed about .496 milligrams, which would sell for around $40. He testified that the total weight of the bags was over 50 grams. He stated the bulk price for the amount of cocaine would be $2000, but if sold the way it was packaged, they would retrieve around $4000 in sales. He testified that the multitude of small packets and the larger packets were associated with a distributor. He testified that he had never seen a drug user with that amount of small packets of cocaine. He stated that the scale was also associated with a distributor in his experience because distributors use them to make small packets. Id. at 156-168.

He testified that the pills, which were found to be alprazolam, were consistently diverted from medicinal use to illegal street sales. He testified that each pill sells for around $3, so a

7

bottle of 67 pills would be worth around $200. He stated that in total, the value of the drugs recovered from the scene was around $9,600, between the marijuana, cocaine and the pills. He testified that he also considered the other items recovered from the scene, like the cash and the baggies. He stated that the denominations of the bills and quantity of different denominations correlated to the amount the drug packets would sell for on the street. He testified that in his expert opinion the drugs recovered were possessed with intent to distribute. He testified that he further supported his conclusion with the information he reviewed in the police reports that indicated that Defendant and Pickron were unemployed, which did not coincide with the amount of cash and drugs in the home. Id. at 168-172. The Commonwealth then rested its case.

On the second day of trial, defense counsel presented two stipulations by and between counsel. First, that if the custodian of records for the Pretrial Service Division of the First Judicial District were called to testify, he would testify that the division is responsible for interviewing all arrested and charged individuals. He would testify that on December 3, 2011, Defendant was interviewed by a representative of the division and he provided his address as 1436 Catharine Street in Philadelphia. He would further testify that Defendant stated that he was employed doing demolition work and made $150 week, when he was interviewed about his employment. (N.T. 8/1/2013, p. 48-49.)

The second stipulation presented was that if the custodian of records for the clerk of courts for the First Judicial District were called to testify, he or she would testify that the address of record for Defendant as reflected in the official court file for this case was 1436 Catharine Street in Philadelphia. Counsel for Defendant then rested. Counsel for Pickron entered a stipulation, by and between counsel, that when Pickron was interviewed by the Pretrial Services

8

Division she stated that she was given compensation from the Workmen's Compensation System in the amount of $864, bi-weekly. Counsel for Pickron then rested. Id. at 50-51.

## ISSUES

I.   WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

II.  WHETHER THERE WAS SUFFICIENT EVIDENCE TO PROVE DEFENDANT GUILTY OF EACH ELEMENT OF EVERY CRIME CHARGED.

III. WHETHER THE COMMONWEALTH FAILED TO SHOW THE WEIGHT OF DRUGS ATTRIBUTABLE TO DEFENDANT CAUSING AN IMPROPER IMPOSITION OF A MANDATORY SENTENCE.

## DISCUSSION

## I.   THE VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.

The verdict in this case was not against the weight of the evidence presented at trial. Under Pennsylvania law, a weight of the evidence claim concedes that the evidence was sufficient to sustain the verdict. Commonwealth v. Smith, 2004 PA Super. 77, 853 A.2d 1020, 1028 (2004) (citing Commonwealth v. Bennett, 2003 PA Super. 212, 827 A.2d 469 (2003)). The weight of the evidence is "exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Rice, 2006 PA Super. 143, 902 A.2d 542, 546 (2006) (quoting Commonwealth v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003)). In addition, "where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, ... rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." Commonwealth v. Kim, 2005 PA Super. 383, 888 A.2d 847, 851 (2005) (quoting Champney, 832 A.2d at 408). An appellate court cannot substitute its judgment for that of the fact finder; therefore, a verdict will be reversed only in the extraordinary situation where the jury's verdict is "so contrary to the

9

evidence as to shock one's sense of justice" and the award of a new trial is imperative so that right may be given another opportunity to prevail. Commonwealth v. Tharp, 574 Pa. 202, 830 A.2d 519, 528 (2003) (citing Commonwealth v. Brown, 538 Pa. 410, 648 A.2d 1177, 1189, (1994)); Commonwealth v. Smith, 580 Pa. 392, 861 A.2d 892, 896 (2005) (citing Commonwealth v. Drumheller, 570 Pa. 117, 808 A.2d 893, 908 (2002)).

In the case at bar, the verdict determined by the jury was supported by the evidence adduced at trial. As discussed in more detail below, the jury heard evidence from an agent and from police officers who executed a search warrant in the home where Defendant had been sleeping and where they found a large amount of narcotics. In the very bedroom where Defendant was found, next to a night table, were marijuana and a large sum of cash, approximately $1300. In that same bedroom, was a woman's purse which contained 58.7 grams of cocaine, a large amount of marijuana, pills and cash. The jury's verdict did not shock one's sense of justice, thus, this Court's decision should not be disturbed on appeal.

## II. THERE WAS SUFFICIENT EVIDENCE TO FIND DEFENDANT GUILTY OF EACH OF THE CRIMES CHARGED.

The evidence adduced at trial was sufficient for the jury to convict Defendant of possession with intent to deliver a controlled substance, conspiracy to possess with the intent to deliver a controlled substance and possession of a controlled substance.

### 1. Sufficiency of the evidence.

A review of the sufficiency of the evidence to support a conviction requires that the evidence be reviewed in the light most favorable to the Commonwealth as verdict winner. Commonwealth v. Walter, 2004 PA Super. 147, 849 A.2d 265, 267 (2004) (citing Commonwealth v. Rose, 463 Pa. Super. 264, 344 A.2d 824, 825 (1975)). The Commonwealth is also entitled to all favorable inferences which may be drawn from the evidence. Commonwealth

10

v. Sanchez, 2006 Pa. LEXIS 1833 (2006) (citing Commonwealth v. Collins, 550 Pa. 46, 50, 703 A.2d 418, 420 (1997)). The evidence put forth by the Commonwealth will be considered sufficient if it establishes each material element of the crime beyond a reasonable doubt, even if by wholly circumstantial evidence. Commonwealth v. Dargan, 2006 PA Super. 74, 897 A.2d 496, 503 (2006) (citing Commonwealth v. DiStefano, 2001 PA Super 238, 782 A.2d 574, 582 (2001)).

When determining whether the evidence is sufficient to support a guilty verdict, the appellate court must examine the entire trial record and consider all of the evidence actually received. Id. However, the trier of fact is entitled to believe all, part or none of the evidence received at trial and the appellate court cannot substitute its judgment for that of the fact-finder. Commonwealth v. Frisbie, 2006 PA Super. 430, 889 A.2d 1271, 1274 (2006) (citing DiStefano, 782 A.2d at 574); Commonwealth v. Kim, 2005 PA Super. 383, 888 A.2d 847, 851 (2005) (citing Commonwealth v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003)). The facts and circumstances established by the Commonwealth need not eliminate any possibility of the defendant's innocence; rather, any doubt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact could be concluded. Commonwealth v. Lambert, 2002 PA Super. 82, 795 A.2d 1010 (2002) (citing Commonwealth v. Cassidy, 447 Pa. Super. 192, 194, 668 A.2d 1143, 1144 (1995)).

## 2. The evidence was sufficient to convict Defendant of possession with intent to deliver a controlled substance.

The evidence adduced at trial was sufficient to support finding Defendant guilty of possession with intent to deliver a controlled substance. The Commonwealth establishes the offense of possession with intent to deliver when it "proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." Commonwealth v.

Little, 2005 PA Super. 251, 879 A.2d 293, 297 (2005) (citing Commonwealth v. Kirkland, 2003 PA Super. 279, 831 A.2d 607, 611 (2003)). It is well settled in Pennsylvania that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver. Commonwealth v. Brown, 2006 PA Super. 177, 904 A.2d 925, 931 (2006) (quoting Commonwealth v. Jackson, 435 Pa. Super. 410, 645 A.2d 1366, 1368 (1994)). Relevant factors include "the particular method of packaging, the form of the drug, and the behavior of the defendant." Kirkland, 831 A.2d at 611 (citing Commonwealth v. Conaway, 2002 PA Super. 9, 791 A.2d 359 (2002)).

In Little, the court found that the evidence was sufficient to sustain a conviction for possession with intent to deliver where police recovered a large quantity of drugs as well as "numerous items of drug paraphernalia," including Ziploc bags, a scale and a known cutting agent. 879 A.2d at 298. In Jones, police recovered a large quantity of drugs and cash from the defendant's car and an expert testified that the sheer quantity drugs and cash, coupled with the manner in which the drugs were packaged, indicated that the drugs were possessed with the intent to distribute. 2005 PA Super. 166, 874 A.2d 108, 122 (2005). The Jones court found this evidence to be sufficient to uphold a possession with intent to deliver conviction. Id.

In the case at bar, the evidence was sufficient to convict Defendant of possession with intent to deliver a controlled substance. The facts and circumstances surrounding Defendant's arrest clearly indicate that Defendant possessed the drugs with the intent to deliver them. Defendant gave his address as 421 Winton Street, when arrested, which is where a significant amount of narcotics and cash were found. Defense counsel argued that there was no evidence that Defendant lived in that house and that he gave a different address later to the Pretrial Division, however, at the time of his arrest Officer Barber noted the address given by Defendant

12

himself as 421 Winton Street. (N.T. 7/31/2013, p. 101). In addition, the narcotics were divided up into smaller baggies to make it easier to sell to a wider audience. The jury heard evidence by stipulation regarding the analyses of the substances found in the house and how they tested positively for marijuana, cocaine and Xanax. The jury also heard evidence of the amount of drugs found at the residence, valued at $9600, as well as expert testimony of how drugs are commonly packaged and sold in Philadelphia. The Commonwealth's expert also testified that in his opinion the drugs were possess with the intent to deliver to others. In addition, in the very bedroom where Defendant was found, next to a night table, were marijuana and a large sum of cash, approximately $1300. In that same bedroom, was a woman's purse which contained 58.7 grams of cocaine, a large amount of marijuana, pills and cash. Also, in the kitchen of this property which Defendant gave as his address, police found 221.3 grams of marijuana in the freezer. This evidence overwhelmingly indicated that Defendant and Pickron possessed drugs with the intent to distribute.

3.    **The evidence was sufficient to convict Defendant of criminal conspiracy.**

The evidence adduced at trial was sufficient to support Defendant's conviction of criminal conspiracy. To prove criminal conspiracy, the Commonwealth must prove that "the defendant (1) entered into an agreement to commit or aid in committing an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy." Commonwealth v. Jones, 2005 PA Super. 166, 874 A.2d 108, 121 (2005) (quoting Commonwealth v. Murphy, 2002 PA Super 84, 795 A.2d 1025, 1038 (2002), aff'd 577 Pa. 275, 844 A.2d 1228 (2004)). The overt act does not need to be committed by the defendant himself; it need only be committed by a co-conspirator. Commonwealth v. Bricker, 2005 PA Super. 307, 882 A.2d 1008, 1017 (2005) (citing Commonwealth v. Hennigan,

13

2000 PA Super. 145, 753 A.2d 245, 253 (2002)). Due to the nature of the crime, proof of conspiracy is almost always in the form of circumstantial evidence. Commonwealth v. Davalos, 2001 PA Super. 197 A.2d 1190, 1193 (2001) (citing Commonwealth v. Kennedy, 499 Pa. 389, 453 A.2d 927, 929-930 (1982)). It can be inferred by "the relation, conduct, or circumstances of the parties and the overt acts of the co-conspirators." Murphy, 197 A.2d at 1138 (quoting Commonwealth v. Johnson, 719 A.2d 778, 784-785 (Pa. 1998) (*en banc*), *appeal denied* 739 A.2d 1056 (Pa. 1999)). Relevant factors for the fact-finder to consider include "an association between the alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and participation in the object of the conspiracy." Bricker, 882 A.2d at 1017 (quoting Jones, 874 A.2d at 121-122).

In the case at bar, this jury properly concluded that Defendant was guilty of conspiracy because Defendant was found to be living at the property where he changed from night clothes to street clothes, found in the rear bedroom where Pickron was coming from in her night clothes and where a large amount of drugs and cash were found. In fact, Defendant had clothes in the bedroom that he changed into when he knew he was under arrest. Most significantly, he gave the address of the residence as his own when questioned by officers for biographical information at the time of his arrest. Although he later stated his address as 1436 Catharine Street, at the time of his arrest, he gave his address as 421 Winton Street. In addition, Pickron told police she lived at 421 Winton Street with her boyfriend, namely, this Defendant. Indeed, the relationship, conduct or circumstances and overt acts of these parties in relation to the house and being present with each other, in close proximity to the drugs and cash was ample evidence for the jury in this case to find Defendant guilty of criminal conspiracy.

14

**4.    The evidence was sufficient to convict Defendant of possession of a controlled substance.**

The Controlled Substance, Drug, Device and Cosmetic Act prohibits the knowing or intentional possession of a controlled substance by a person not authorized under the law to do so. 35 Pa. C.S.A. § 780-113(a)(16); Commonwealth v. Pitner, 2007 PA Super 206, 928 A.2d 1104, 1108 (2007). Marijuana is a controlled substance. 35 Pa. C.S.A. § 780-104(l)(iv). Possession can also be based on constructive possession, or in the words of the Pennsylvania Superior Court:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Kinard, 2014 PA Super 41 (Pa. Super. Ct. Mar. 4, 2014) (quoting Commonwealth v. Brown, 48 A.3d 426, 430 (Pa.Super.2012), appeal denied, ⸺ Pa. ⸺, 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Constructive possession may be found where no single piece of evidence establishes possession, but "the totality of the circumstances infer such." Kinard (citing Commonwealth v. Nelson, 399 Pa.Super. 618, 582 A.2d 1115, 1119 (Pa.Super.1990), appeal denied, 527 Pa. 664, 593 A.2d 840 (1991)). Additionally, "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." Commonwealth v. Johnson, 611 Pa. 381,

15

407, 26 A.3d 1078, 1094 (2011) (quoting Commonwealth v. Valette, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992)).

In the case at bar, the jury was given the following jury instruction regarding constructive possession:

> A person can be guilty of possessing an item even when he or she is not holding it or touching it or in the same area as the item. That type of possession is what the law calls constructive possession. For there to be constructive possession, it must be proved beyond a reasonable doubt that the individual had both the intent to control the item and the power the control the item. In determining whether or not each defendant had possession of a controlled substance, you should consider all of the facts and circumstances that may shed light on the question of whether each defendant had the intent to control and the power to control the substance. Two or more persons may have joint possession of a controlled substance provided each has the intent to exercise joint control over that substance and that each has the power to control it. Each of the joint possessors is regarded as having possession of the controlled substance for purposes of the criminal law.

(N.T. 8/1/2013, p. 150-151). Based on the totality of the circumstances, the jury properly found that Defendant was in constructive possession of the drugs because the drugs were found in an area of the house where Defendant had equal access and control to the drugs, as they were next to where he slept in an open dresser drawer. In fact, Defendant was found by police right next to the specific dresser drawer where police found a large amount of cash and marijuana. In that same bedroom was a purse with a large amount of cocaine, marijuana and Xanax. Further, Defendant provided the address of the house in which he was found sleeping to Officer Barber when questioned about his residence at the time of his arrest. Finally, Defendant was not a person who was authorized to possess marijuana, cocaine or Xanax and the jury properly convicted Defendant of possession of a controlled substance.

16

### III. THE COMMONWEALTH ADEQUATELY SHOWED THE DRUG AMOUNTS ATTRIBUTABLE TO DEFENDANT AND AS A RESULT, THE MANDATORY SENTENCING RANGE WAS PROPERLY APPLIED.

In Pennsylvania, "when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity. 42 Pa. C.S.A. § 7508.

In the case at bar, the mandatory sentencing range was properly applied to the jury's finding that the drug amounts attributable to Defendant's were above 10 grams. The jury heard testimony that the total weight of cocaine found in the house at 421 Winton was approximately 50 grams. (N.T 7/31/2013, p. 166). As discussed above, the jury found Defendant guilty of the possession of the drugs in the house, thus the mandatory sentencing range was properly applied.

17

## CONCLUSION

After a review of the applicable statutes, case law, and testimony, this Court committed no error. The verdict was not against the weight of the evidence. The jury had sufficient evidence to convict Defendant of PWID, conspiracy and K&I. The Commonwealth proved drug amounts attributable to Defendant necessary to impose a mandatory minimum sentence. Therefore, this Court's decision should be upheld on appeal.

BY THE COURT:

_____ J.

18